IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WYATT DORSEY, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : No. 4:98-cr-10-CDL-CHW-1 |
| | : |
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent. | : |
| _____ | : |

## ORDER AND RECOMMENDATION

On March 12, 1998, following a jury trial, Defendant Wyatt Dorsey was found guilty of one count of bank robbery, one count of use of a firearm during a crime of violence, and one count of possession of a firearm by a convicted felon. He was sentenced on August 5, 1998, to a total term of 355 months imprisonment followed by four years of supervised release.

Defendant has now filed a motion to reduce his sentence for "extraordinary and compelling reasons" pursuant to the First Step Act, at 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 55). At the Court's direction, Defendant has also filed an amended petition in light of a November 1, 2023, amendment to the applicable policy statement of U.S.S.G. § 1B1.13. (Doc. 58). For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's motion, as amended (Docs. 55, 58) be **DENIED**. It is further **ORDERED** that his motion for appointment of counsel (Doc. 65) is **DENIED**.

1

In his present motion,[1] Defendant does not contend that compassionate release is warranted based on his age, medical circumstances, or family circumstances, but instead contends that there are extraordinary and compelling reasons for a sentence reduction because he received an "unusually long sentence" and because he would be subject to shorter sentence under the current sentencing guidelines. Specifically, he contends that under Amendment 798 to the Guidelines, enacted on August 1, 2016, his burglary conviction would no longer predicate a career offender designation, and he would therefore be subject to a lower guidelines range if sentenced today.

The First Step Act does not authorize the relief that Defendant requests. The First Step Act provides that any "extraordinary and compelling reasons" must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statements in this case are found at U.S.S.G. 1B1.13(b)(6), which explains that the term "extraordinary and compelling reasons" may include circumstances involving an "unusually long sentence," where a subsequent change in the law would reduce the likely sentence in the case, but the policy statement expressly excludes relief based on a guidelines amendment that has not been made retroactive. Because Amendment 798 was not made retroactive, the Court is not authorized to grant the relief Defendant requests.

---

[1] Defendant filed a previous motion for compassionate release in 2020, based on medical concerns. (Doc. 47). This motion was denied. (Doc. 50).

*1. Defendant's Original Sentence*

Defendant was sentenced on August 5, 1998, to a term of 295 months on count one, 60 months on count two, to be served consecutive to count one, and 120 months on count three, to be served concurrent to counts one and two, for total term of 355 months imprisonment followed by four years of supervised release. This sentence was based on a total offense level of 34 and criminal history category of VI, for a guidelines range of 262 to 300 months for counts one and three, plus a mandatory minimum 60 months consecutive for the firearms offense of count two. (PSR, Doc. 32, p. 18, ¶¶ 89-91).

The total offense level for count three, possession of a firearm by a convicted felon, was calculated based on a base offense level of 24, with a 4-level enhancement for use of the firearm in connection with a robbery, a 2-level enhancement for obstruction of justice because Defendant committed perjury at trial and in a motion to suppress, and a 2-level enhancement for creating a substantial risk of death or serious bodily injury to his girlfriend and infant son while fleeing from police, for a total offense level of 32 on count three. (PSR, Doc. 32, pp. 6-8). Count one, armed bank robbery, began with a base offense level of 20, with a 2-level enhancement for taking the property of a financial institution, a 2-level enhancement for obstruction of justice, and a 2-level enhancement for creating a risk of death or serious bodily injury to his girlfriend and son. The combined offense level for counts one and three, under the multiple count adjustment of U.S.S.G. § 3D1.4, the higher of the two offense levels was adjusted by a 1-level enhancement, for a total offense level of 33.

Because Defendant was found to be a career offender, the final offense level was increased to 34 under U.S.S.G. § 4B1.1(b). (PSR, Doc. 32, pp. 8-9, ¶¶ 44, 45). Defendant's career offender status was based on his November 3, 1981, conviction for bank robbery and armed robbery in the United States District Court for the Western District of North Carolina, for which he received a sentence of 15 years in prison, and his May 25, 1988, conviction for burglary in the Superior Court of Dekalb County, Georgia. (*Id.*). Because of his career offender status, Defendant's criminal history category was also raised from IV to VI, pursuant to U.S.S.G. § 4B1.1(b). (*Id.*).

With a total offense level of 34 and a criminal history category of VI, Defendant's guidelines sentencing range was 262 to 300 months. He was sentenced near the top of that range, to a term of 295 months on count one and 120 months concurrent on count three, with the mandatory 60-month consecutive sentence for count two, for a total of 355 months.

2. *Defendant's Potential Sentence under Amendment 798*

Defendant is correct to argue that he would not be classified as a career offender if he were sentenced under the current sentencing guidelines. Effective August 1, 2016, the Sentencing Commission promulgated Amendment 798, which eliminated burglary of a dwelling as a predicate offense for career offender designation, in response to the Supreme Court's decision in *United States v. Johnson*, 576 U.S. 591 (2015). U.S.S.G. App. C, Amendment 798. Had Defendant been sentenced following the effective date of Amendment 798, he would not have been a career offender, and his sentence would have been based on a total offense level 33 and criminal history category IV. His sentencing

4

range would have been 188 to 235 months on counts one and three, rather than 262 to 300 months. Had he been sentenced at the top of that range, his total sentence would have been 295 months and would have expired in March 2023.

   3. *Exclusion of Retroactive Relief under Amendment 798*

Amendment 798 does not, however, warrant relief under 18 U.S.C. § 3582(c)(1)(A)(i) because the amendment has not been made retroactive. As a general rule, a sentence constitutes a final judgment, and a court "may not modify a term of imprisonment once it has been imposed" except under the specific conditions set forth in § 3582(c). Among those conditions is the "extraordinary and compelling reasons" provision of 3582(c)(1)(A)(i), which authorizes the Court to modify a sentence only to the extent "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Because Amendment 798 has not been made retroactive, the applicable policy statements foreclose relief in cases such as this. The applicable policy statements for sentence reductions under Section 3582(c)(1)(A) are set out at U.S.S.G. § 1B1.13. The policy statements are binding on the courts, and "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13." *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). The relevant policy statement was amended on November 1, 2023, by Amendment 814, to expand the interpretation of the term "extraordinary and compelling reasons" to include circumstances involving an "unusually long sentence." The policy statement authorizes courts to grant relief in cases where a subsequent change in the law would reduce the likely sentence, but it specifically

excludes relief based on a guidelines amendment that has not been made retroactive. The amended policy statement provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (**other than an amendment to the Guidelines Manual that has not been made retroactive**) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> U.S.S.G. § 1B1.13 (b)(6) (emphasis added).

Amendment 798 has not been made retroactive. The Guidelines Manual, at U.S.S.G. § 1B1.10(d), specifically lists the amendments that authorize a retroactive sentence reduction. Amendment 798 is not listed among those covered amendments. The Eleventh Circuit has observed that "Amendment 798 does not apply retroactively to defendants sentenced before it took effect." *United States v. Pryor*, 824 F.App'x. 652, 655 (11th Cir. 2020) (citing *United States v. Martin*, 864 F.3d 1281, 1283 (11th Cir. 2017)). As such, the applicable policy statements in the Guidelines Manual do not authorize relief in cases such as this one.

Defendant cites *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021), for the proposition that "a retroactive change in sentencing law can support a finding under Section 3582(c)(1)(A), so long as the Petitioner offers at least one other reason in support of that finding (e.g., his rehabilitation)." (Doc. 55, p. 4). The holding in *Owens* is not applicable in this case, because the change of law involved a change in the statutory sentence range,

6

not a non-retroactive change in the Sentencing Guidelines. The defendant in *Owens* was sentenced to 1260 months in prison for five separate counts possessing a firearm during and in furtherance of a crime of violence under 18 U.S.C. § 924(c). Under the law at the time of sentencing, in 2004, the first count carried a mandatory minimum of five years, and each additional count carried an additional 25-year mandatory minimum consecutive sentence. In 2018, the First Step Act "amended 18 U.S.C. § 924(c) such that escalating mandatory-minimum sentences for a second or subsequent § 924(c) conviction applied only to a defendant who has a prior final § 924(c) conviction." *Owens*, 996 F.3d at 757-58. Although *Owens* predates Amendment 814, the current policy statement would continue to authorize relief for a case involving a change of *statutory* law. This case, by contrast, involves a non-retroactive change to the Sentencing Guidelines, a change that has been expressly excluded from consideration by the binding policy statement of the Sentencing Commission.

4. *Sentencing Factors of 18 U.S.C. § 3553(a)*

Even if resentencing were authorized under Section 3582(c)(1)(A), it would not be warranted under the sentencing factors of 18 U.S.C. § 3553. Section 3582(c)(1)(A) grants courts discretion to resentence certain eligible defendants but does not require resentencing. If a defendant is eligible for resentencing, the court "'may reduce' the sentence after considering the 3553(a) factors." *Bryant*, 996 F.3d at 1251. In this case, the sentencing factors support the sentence Defendant received. As the pre-sentence report shows, the bank robbery in this case was particularly violent. The pre-sentence report states that Defendant and an unindicted co-conspirator

>  entered the bank wearing gloves, head covering, and carrying handguns. The defendant demanded money from a teller, became impatient, and jumped through the teller window. The defendant removed money from the teller drawer himself, including bait bills and dye pack. The defendant then demanded more money from another teller who handed him currency from her drawer.

(PSR, Doc. 32, p. 3, ¶ 7).

One of the tellers submitted a statement recalling that "she was aware of the gun and was aware that she could die because she was told by the defendant that 'he would blow my god damned head off.'" (PSR, Doc. 32, p. 4, ¶ 11). When law enforcement officers attempted to arrest Defendant several weeks after the robbery, Defendant led them on a vehicle pursuit "through residential neighborhoods where he disregarded several stop signs and almost struck several occupied vehicles." (PSR, Doc. 32, p. 4, ¶ 9). Defendant jumped out of the vehicle and fled on foot, leaving his girlfriend and infant son in the vehicle which was still in gear and continued running until it struck a tree. (*Id.*). The PSR further notes Defendant's criminal history, which indicates that at the time of the offense Defendant was still on parole from a 1981 armed bank robbery conviction in the Western District of North Carolina, for which he was sentenced to 15 years in prison. (PSR, Doc. 32, p. 11, ¶¶ 52, 54). Defendant was also still on parole for a 1988 burglary conviction in the Superior Court of Dekalb County, for which he was sentenced to 20 years in prison. The nature and circumstances of the offense and the history and characteristics of the Defendant, along with the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, and the need to protect the

8

public from further crimes by the Defendant all support the 355-month sentence that was imposed in the case.

5. *Exhaustion of Administrative Remedies*

Finally, Defendant is not entitled to relief because he has not shown that he has exhausted his administrative remedies as required under Section 3582(c)(1), which gives courts discretion to modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Defendant asserts that he hand-delivered a request for compassionate release to the warden of his facility on July 12, 2022, and that the request was denied on July 19, 2022. (Doc. 55, p. 3). Defendant has submitted no documentary evidence to support this assertion.

## MOTION TO APPOINT COUNSEL

Following the Government's response to his amended motion, Defendant filed a motion for appointment of counsel, contending that he is "out of his depth with the correct motions to file with this Court." (Doc. 65, p. 2). There is no constitutional or statutory right to appointed counsel for a motion to modify an imposed term of imprisonment under 18 U.S.C. § 3582(c). *See United States v. Webb*, 565 F.3d 789, 795 (11th Cir. 2009) (specifically addressing motions under § 3582(c)(2)). Courts retain discretion to appoint counsel in "instances in which equitable concerns would make the appointment of counsel appropriate to ensure a just outcome." *Id.*, at 795, n. 4. Such equitable concerns are not at issue here. Defendant's briefs are very thorough and reflect a sophisticated understanding

9

of the applicable law. Accordingly, Defendant's motion for appointment of counsel (Doc. 65) is **DENIED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the presiding District Judge **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 6th day of June, 2024.

s/ Charles H. Weigle_____  
Charles H. Weigle  
United States Magistrate Judge